458 So.2d 144 (1984)
JEFFERSON PARISH HEALTH UNIT
v.
STATE of Louisiana OFFICE OF EMPLOYMENT SECURITY, et al.
No. 83 CA 0994.
Court of Appeal of Louisiana, First Circuit.
October 9, 1984.
Ann M. Metrailer, Charles Patin, Asst. Atty. Gen., Baton Rouge, for plaintiff, appellant.
James A. McGraw, Baton Rouge, for defendant, appellee Office of Employment Sec.
Philip A. Costa, New Orleans, for defendant-appellee Denise A. Licausi.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SAVOIE, Judge.
Appellant, Jefferson Parish Health Unit (Employer), appeals the decision of appellee, the Board of Review, State of Louisiana Office of Employment Security. The Board affirmed the decision of the appeals referee who found that Denise Licausi (claimant) had not been discharged for misconduct connected with her employment pursuant to L.S.A.-R.S. 23:1601(2). Thus, unemployment compensation benefits were awarded to claimant. The trial court affirmed the decision of the Board. We reverse.
Ms. Licausi worked from August 23, 1979, until July 10, 1981, as a Sanitarian I with the Department of Health and Human Resources, Jefferson Parish Health Unit. Her working hours were from 8:00 A.M. to *145 4:30 P.M. Monday through Friday. Claimant was basically responsible for inspecting various types of establishments and submitting reports on each inspection. Most of the day was spent outside the office on the inspections, but some office work was necessary in the early morning and late afternoon.
Claimant was discharged by Mr. R.K. Banks, Acting Assistant Secretary, by letter dated July 9, 1981. The dismissal was effective at 4:30 P.M. on July 10, 1981. The reasons stated for the dismissal were lack of adaptation to authority, chronic tardiness, leave abuse, falsification of agency records and inappropriate conduct while on official duty.
The allegation of claimant's lack of adaptation to authority stems primarily from incidents involving her supervisor, Ms. Williams. Two such incidents were referred to in the letter of termination. First, on March 25, 1981, claimant engaged in the use of loud and profane language directed to Ms. Williams when requested to turn in a leave slip for being tardy for work that day. Several people in the office heard this exchange. On May 26, 1981, Ms. Williams requested claimant to repair ledger sheets which claimant had torn from the ledger book. Claimant refused to do so in a loud voice which included racial slurs. Again, several employees in the office heard the exchange.
The allegations of chronic tardiness and leave abuse are interrelated since the leave abuse arose from the tardiness. Claimant arrived late for work seven times from April 22, 1981 to May 22, 1981, as noted in the termination letter. Other documents introduced at the hearing, as well as testimony elicited from witnesses for both parties, indicated many other incidences of tardiness.
The charge of falsification of agency records involved inspection reports, daily sign-in sheets and mileage claims. An inspection report, dated January 30, 1980, on Big John's Foodland was not signed by the owner, although a signature had been placed on that line of the form. Claimant was charged with placing or allowing another to place the false signature on the form. When questioned about the matter, claimant responded that she did not think she had done that. On March 3, 1980, claimant conducted an inspection of a Pizza Hut located in Kenner. She admitted placing the signature of the owner/manager on the bar inspection form. She explained the situation by saying that she had the owner's permission, but she did not inform her supervisor of her action.
The matter involving the sign-in sheets arose when claimant allegedly signed-in at an earlier time than her actual arrival. This activity, if true, would serve to falsify payroll records. Claimant was charged with engaging in this activity on three occasions: November 5, 1980; April 1, 1981; and April 3, 1981. In addition, on May 21, 1981, claimant signed in at 9:0, omitting the last digit. The employer also considered this a falsification of agency records.
The alleged discrepancies over mileage claims resulted when claimant's travel dailies for June 5, 8, 9 and 10, 1981, were checked. The mileage recorded by claimant was excessive for each of those days, with more than a fifty percent overage for June 10. The travel dailies were checked as a routine matter by two sanitarians who traveled the route recorded by claimant for each of the days in question.
The final reason given for the termination was inappropriate conduct while on official duty. Three instances were cited as grounds for this charge. On April 16, 1981, claimant engaged in coarse and abrasive language directed toward the owner and the bartender of the Bavarian Tavern. On April 2, 1981, claimant insisted on being allowed to enter the back room of a 7-11 store after being informed that money was being counted for a bank deposit and that no one was allowed to enter during that time. Several customers overheard the exchange between claimant and the store employees. On November 14, 1980, claimant was accused of being forward and arrogant during a lunchtime inspection of Thompson's Restaurant.
*146 This matter was heard before an appeals referee who determined that claimant had not been discharged for misconduct. The Board of Review affirmed that decision. The employer filed an appeal with the district court seeking review of the Board's decision. After reviewing the records of the administrative hearing, the trial court rendered judgment affirming the Board's decision. Employer appeals from that judgment.

ASSIGNMENT OF ERROR
Employer contends that the trial court erred in its application of the standards for judicial review as set forth in L.S.A.-R.S. 23:1634, by affirming the decision of the Board of Review which qualified claimant for unemployment compensation.
The scope of appellate review of cases arising under the Louisiana Employment Security Law is set forth in L.S.A.-R.S. 23:1634. The statute provides for judicial review of such cases as follows:
"... In any proceeding under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law."
The standard of review set forth in L.S. A.-R.S. 23:1634, has been interpreted by our Supreme Court. In Banks v. Administrator of Department of Employment Security of State of Louisiana, 393 So.2d 696 (La.1981), the Supreme Court stated that "there must be legal and competent evidence to support the factual findings on which the administrative determination turns."
Thus, we must determine whether the facts are supported by competent evidence and whether the facts, as a matter of law, justify the action taken. Wilkerson v. State of Louisiana, Office of Employment Security, 439 So.2d 506 (La.App. 1st Cir. 1983). We have thoroughly reviewed both the transcript of the hearing and the many exhibits which were introduced. We agree with appellant that the evidence does not support the findings of fact upon which the appeals referee based her opinion.
First, the referee concluded that appellant's policy regarding mileage discrepancies was to submit the discrepancies to the sanitarian for review. If the sanitarian disagreed with the findings, a recheck was made using the sanitarian's car. The referee found that no recheck was made in claimant's car, nor was there a comparison made between the odometer on claimant's car and the odometer in either Mr. Mangiaracina's or the Chief Sanitarian's car. Thus, the referee concluded that the evidence presented did not establish that claimant falsified her travel reports or expense reports since the employer failed to follow its own policy in verifying the reports.
Several witnesses testified regarding the manner in which the mileage claims were checked, including the Chief Sanitarian, Mr. Fox, who instituted the policy; the sanitarian who checked the claims, Mr. Mangiaracina; and the Program Supervisor, Mr. Pollet. Of these, Mr. Pollet was the only witness who stated that the employer's policy was as the referee found it to be. In his testimony, Mr. Pollet admitted that his knowledge of the policy was based upon what he had heard other people say. Both Mr. Fox and Mr. Mangiaracina testified that the claims were checked, giving the employee the benefit of doubt regarding the route, by following the report exactly as it was written. Normally, discrepancies were discussed with the employee. In claimant's case, however, a request for dismissal was under consideration by the Acting Assistant Secretary, Mr. Banks, and all information was submitted to him. Claimant was permitted to explain all allegations at a conference conducted by Mr. Banks on July 1, 1981.
"Sufficient evidence" as required by L.S.A.-R.S. 23:1634 means legal and competent evidence; hearsay is not considered sufficient evidence. Southeastern Louisiana University v. Shelton, 431 So.2d 432 (La.App. 1st Cir.1983). Since Mr. Pollet's *147 testimony regarding the policy on mileage checks was based upon hearsay, it cannot be considered when determining the employer's policy on mileage checks. The referee's opinion regarding the policy was based on hearsay, not evidence sufficient to sustain her finding.
Second, the referee found that although claimant was frequently tardy in reporting to work, no evidence of tardiness was presented following a written reprimand for tardiness on May 28, 1981. This finding of fact is incorrect. The written reprimand dated May 28, 1981, concerned behavior unbecoming a state civil service employee. The written reprimand concerning tardiness was dated April 10, 1981. Claimant was tardy on seven occasions from April 22, 1981 through May 22, 1981. Thus, claimant was tardy numerous times after receiving a written reprimand for tardiness.
Within two weeks of the last incident of tardiness, termination proceedings were instituted by the Chief Sanitarian. Tardiness was one of the primary reasons that claimant's dismissal was sought. We believe that the referee confused some of the facts in her opinion. We also believe that tardiness was a proximate cause of the dismissal and that the frequent tardiness was cause for dismissal.
The third reason for the termination was claimant's lack of adaptation to authority by disrespecting her supervisor. Again, we find that the referee erred in her findings of fact on this point. The referee found that the supervisor had conflicts with employees other than claimant. She further concluded that "when a supervisor treats an individual in an abusive manner which provokes the individual into behaving in a like manner, it cannot be held that the behavior of the employee constitutes misconduct connected with the employment."
Nothing in the record in any way indicates that the supervisor, Ms. Williams, had conflicts with any employee other than claimant. There is evidence that claimant had conflicts with other employeessupervisors and co-employees alike. Further, the record is devoid of any evidence that Ms. Williams provoked claimant into acting in an abusive manner. In the absence of evidence to support the referee's findings, we must conclude that her opinion was based upon mere speculation rather than legally sufficient evidence.
We find that the facts are as follows rather than as stated by the referee. Claimant had problems in adapting to authority and on several occasions was disrespectful to her supervisor. On at least one occasion, claimant refused to follow a direct order of her supervisor to repair ledger sheets and continued to refuse until warned by the Chief Sanitarian. More than once, claimant directed abusive and profane language to her supervisor. There is no evidence in the record that the supervisor, Ms. Williams, treated claimant in an abusive manner or that she had conflicts with any employee other than claimant. Claimant had a problem with tardiness throughout her employment. After receiving a written reprimand for tardiness on April 10, 1981, claimant was tardy seven times from April 22, 1981 through May 22, 1981.
We find that claimant refused to follow direct orders given by her supervisor, directed abusive and profane language to the supervisor, and was repeatedly tardy. These acts of claimant are acts of misconduct sufficient to disqualify her for unemployment compensation under L.S.A.-R.S. 23:1601(2). Dorsey v. Administrator, Louisiana Department of Employment Security, 353 So.2d 363 (La.App. 1st Cir. 1977).
For the foregoing reasons, the judgment of the district court is reversed and this case is remanded to the Louisiana Board of Review to grant relief to appellant, Jefferson Parish Health Unit, in accordance with law and this opinion. Costs are to be absorbed by the clerk of this court and the clerk and sheriff of the trial court. Shelton, supra.
REVERSED AND REMANDED.